JACOBS P.C.                                       **Hearing Date: April 21, 2026**
*Proposed Counsel for Debtor*                     **At: 10:00 a.m. (ET)**
Robert M. Sasloff, Esq.
717 Fifth Avenue, Floor 17
New York, New York 10022
212-229-0476
robert@jacobspc.com

GERON LEGAL ADVISORS LLC
*Counsel for Lender*
Yann Geron, Esq.
370 Lexington Avenue, Suite 1208
New York, New York 10017
646-560-3224
ygeron@geronlegaladvisors.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                   :        Chapter 11
                                         :
CHEN FOUNDATION, INC.,         :        Case No. 26-10545-sab
                                         :
                      Debtor.      :

------------------------------------------------------------x

### JOINT REPLY TO THE OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTOR'S APPLICATION APPROVING A STIPULATION AND ORDER <u>REGARDING RECEIVER</u>

**TO THE HONORABLE SHIREEN A. BARDAY,**
**UNITED STATES BANKRUPTCY JUDGE:**

Chen Foundation, Inc. (the "<u>Debtor</u>"), the above-captioned debtor, joined by LCP SoHo V LLC (the "<u>Lender</u>")[1], by their respective undersigned attorneys, hereby submit this reply in further support of the Debtor's application (the "<u>Application</u>") for entry of a stipulation and order (the "<u>Stipulation</u>") allowing Nolan E. Shanahan (the "<u>Receiver</u>")[2] to remain in place as receiver of

---

[1] As successor in interest to Shanghai Commercial Bank Ltd., New York Branch ("<u>SCB</u>") and The Shanghai Commercial & Savings Bank, Ltd. ("<u>SCSB</u>" and together with SCB, the "<u>Original Lender</u>").

[2] The Debtor, Lender, and the Receiver are, collectively, the "<u>Parties</u>" to the Stipulation.

Debtor's property known as 250 Lafayette Street, New York, New York 10012 (the "Property"),

and in opposition to the United States Trustee's objection (the "Objection") to the Application,

respectfully state the following:

**ARGUMENT**

**a.     The Receiver Should Be Permitted to Remain in Place Pursuant to Section 543(d)(1)**

1.     Although the general rule under Section 543 is that custodians (including receivers)

must turn over estate property when a bankruptcy petition is filed, courts have recognized

exceptions to this rule. Similarly, while Section 105(b) precludes the court from **appointing** a

receiver, it does not preclude the court from **continuing the appointment** of a state court equity

receiver to manage debtor's real property that is in the receiver's custody and control. *In re*

*Olympia & York Maiden Lane Co.*, LLC, 233 B.R. 662, 667 (Bankr. S.D.N.Y. 1999).

2.     Section 543(d) provides a general statutory basis for suspension of the requirements

laid out in Section 543(b). As detailed in Debtor's Application, Section 543(d)(1) provides that,

upon notice and hearing, the Court is empowered to "excuse compliance with subsections (a), (b),

or (c)…if the interests of creditors…would be better served by permitting a custodian to continue

in possession, custody, or control of such property." 11 U.S.C. §543(d)(1).

3.     Section 543(d)(1) is considered a modified abstention provision, and, thus, allows

the bankruptcy court to "excuse a custodian's strict compliance with the turnover provisions of

§543(a) and (b), if the interest of creditors would be better served by permitting the custodian to

continue in possession of the property." *In re Dill*, 163 B.R. 221, 225 (E.D.N.Y. 1994) (holding

receivers have been properly excused from the Bankruptcy Code's turnover requirements and

allowed to retain possession, custody and control of mortgaged properties) citing *In re Constable*

*Plaza Associates, L.P.*, 125 B.R. 103 (Bankr. S.D.N.Y. 1991).

4.       Courts consider several factors in determining whether the interests of creditors would be better served by keeping the receiver in place including: "(1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the turnover property for the benefit of the creditors; (3) whether there has been mismanagement by the debtor; (4) whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and (5) the fact that the bankruptcy automatic stay has deactivated the state court receivership action." *In re Dill*, 163 B.R. at 225.  Importantly, the interests of the debtor, however, are not part of the criteria considered when applying Section 543(d)(1).  *Id.* See also *In re Falconridge, LLC*, No. 07-BK-19200, 2007 WL 3332769, at *7 (Bankr. N.D. Ill. Nov. 8, 2007) (considering, in addition to the above factors, (i) whether turnover would be injurious to creditors and (ii) whether the debtor will use the turned over property for the benefit of its creditors); see also *In re Packard Square LLC*, 575 B.R. 768 (Bankr. E.D. Mich. 2017) (additionally considering the length of time that the receiver has been in place and what the receiver has done).

5.       This list is not exhaustive and, "[w]hile these factors are helpful, the court's analysis is not limited to them." *In re Novus Structures, Inc.*, 653 B.R. 429 (Bankr. N.D. Ill. 2023). Ultimately, determination is based on the interests of creditors being served by the continuation of service of the receiver.

6.       The Parties understand and respect the United States Trustee's position but submit that there is ample statutory authority and case law to support continuation of the receiver's role in limited circumstances, and that the instant case presents several of the factors weighing in favor of keeping the receiver in place for the best interests of the estate's creditors.

7.     As discussed in the Application, the Receiver is a highly experienced partner at a large and reputable law firm. He has been in place as the receiver for more than a year and, with the assistance of a court-approved property manager that he oversees, runs the Property in an exemplary manner.  The tenants of the Property and the creditors of the estate are familiar with his role and procedures for effective management of the Property. There are no known unpaid bills, and tenants are generally current with their rental payments.  During his appointment, the Receiver increased occupancy by 20% and successfully vacated non-paying tenants. The Receiver has continued to make improvements to the Property's operations, which serve to protect its value. For example, a tenant occupying 5% of the building is negotiating with the Receiver to lease additional space increasing its occupancy to 16% of the total space in the building. These lease negotiations and work on the larger leased space are expected to be completed within 120 days. The Receiver is also currently negotiating with the second highest paying tenant in the building to lease them additional storage space which will greatly enhance the odds that they will expand their space in the building and extend their lease, and the Receiver is in the process of working with contractors to repair and improve the two vacant floors which were formerly occupied by the Debtor. This work is also expected to be completed within 120 days.

8.     Additionally, the Parties are confident that a successful chapter reorganization of the Debtor will be achieved in short order. The Receiver's continued accomplishments protect the value of the building and ensure that the Lender will fund a plan under which unsecured creditors will receive a distribution. In fact, the Debtor and Lender are on course to file a Plan within the next 30 days, and to seek confirmation within 30 to 45 days thereafter.  Any changes during this short timeframe would be injurious to creditors. Allowing the Receiver to remain in place would

4

avoid unnecessary delays in day-to-day management of the Property and ensure that the creditors are not negatively impacted while the Debtor's Plan is finalized and confirmed.

9.      Furthermore, it is unclear whether the Debtor can manage its estate as effectively as the Receiver given the current state of health of some of the Debtor's principals, including the individual who historically led the management of the Property. This is the Debtor's second attempt at a successful bankruptcy filing and the Parties are eager to see this filing through.

10.     These instances support excusing the Receiver's compliance with the general provisions of Section 543 to permit the Receiver to remain in place, an outcome explicitly contemplated by the Bankruptcy Code.[3]

b.      **The Stipulation Addresses all Concerns Raised by the Objection**

11.     The Receiver intends to work closely with the Debtor to allow the Debtor to fully comply with all UST guidelines and requirements. As detailed in the Stipulation, the Receiver is required to maintain all rents collected in his Receiver Accounts[4] and to maintain the balance in such account(s) below $250,000[5]. The Stipulation also requires the Receiver to provide monthly management reports and bank statements for the Receiver Accounts which Debtor can review and use to fulfill its obligation regarding, for example, monthly operating reports.

12.     While the Receiver is ultimately accountable to the state court, the Stipulation will be binding and enforceable in this Court. Thus, he will also be accountable to this Court in providing reports and in accounting for estate property and operations.

---

[3] The Trustee's interpretation of Bankruptcy Code section 105(b) as prohibiting receivers would render section 543(d) which permits the continuation of receiverships surplusage, and there is a presumption against such an interpretation. *See, e.g., TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quotations omitted)).

[4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Stipulation.

[5] The stipulation provides that amounts in excess of $310,000 will be paid to the Lender as adequate protection, after which the balances in each of the Receiver Accounts will be less than the $250,000 per account limit for FDIC protection.

13.     Moreover, in an effort to allay concerns raised in the UST's Objection, the Receiver is willing to make additional accommodations to avoid disruption of the day-to-day management of the Property and the progress made with the Property's operations. Specifically, in addition to the provision in the Stipulation that limits the amount the Receiver can maintain in the Receiver Accounts, the Receiver has indicated a willingness to move all funds to ConnectOne Bank, which is an approved depository.

14.     The Parties stress that the Receiver's role should be considered a necessary but short-term interim solution to get the Debtor to plan confirmation, which may be achieved this Summer, without disruption of the Property's current successful operations. Therefore, the Parties also propose that, rather than the Stipulation taking effect until a certain date, the Stipulation would be made subject to review every 120 days to determine whether the Receiver's control continues to be warranted.

c.      **Practical Considerations Weigh in Favor of Permitting the Receiver to Remain in Place**

15.     The Lender intends to support the Debtor's Plan but needs to ensure its collateral is protected. The Debtor's schedules value the Property at $27,900,000[6]. The Lender's claim is no less than $30,065,974.51.  Therefore, the Debtor has no equity in the Property.  The only way unsecured creditors will receive any distribution is via confirmation of a plan that provides for payment to unsecured creditors. Maintaining the Receiver in place with the Debtor's express agreement and support will help support this outcome.

16.     The Debtor has limited operations and any disruption in operations would harm creditors unnecessarily. The family that ran the Debtor moved out of the Property prior to the filing. The Debtor is not readily able to operate itself.  Therefore, putting the Debtor back in control of

---

[6] This value may be confirmed by appraisal prior to plan confirmation.

the Property's operations will require the Debtor to hire a new management company, which will create delays and disruptions. The Receiver is ideally situated to continue to operate the Property and preserve its value.

17.     Finally, the Stipulation is entered into on consent by all the Parties, including the Debtor in its business judgment, and, therefore, it should be entitled to some deference.

18.     For all the foregoing reasons, the Stipulation regarding the Receiver should be approved.

Dated:    New York, New York               JACOBS P.C.
          April 17, 2026                   *Proposed Counsel for Debtor*

                              By:    *s/ Robert M. Sasloff*
                                     Robert M. Sasloff, Esq.
                                     717 Fifth Avenue, Floor 17
                                     New York, New York 10022
                                     212-229-0476
                                     robert@jacobspc.com


                                     GERON LEGAL ADVISORS LLC
                                     *Counsel for Lender*

                              By:    *s/ Yann Geron*
                                     Yann Geron, Esq.
                                     370 Lexington Avenue, Suite 1208
                                     New York, New York 10017
                                     646-560-3224
                                     ygeron@geronlegaladvisors.com