**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CHEN FOUNDATION, INC., | : | Case No. 26-10545 (SAB) |
| | : | |
| Debtor. | : | |

**DECISION AND ORDER DENYING MOTION TO VACATE OR AMEND THE CONFIRMATION ORDER AND FOR A STAY PENDING APPEAL**

Four individuals, Julie Chen, Lucia Chen, Ted Chen, and Tsing Fang Chen (collectively, the "Movants"), filed a motion on November 5, 2026, to vacate or amend the confirmation order and for a stay pending appeal (ECF No. 86, the "Motion") of this Court's Order, entered October 22, 2026 (ECF No. 80, the "Confirmation Order"), which (i) approved the adequacy of the disclosure statement pursuant to section 1125 of the Bankruptcy Code (ECF No. 41, together with all schedules and exhibits thereto, the "Disclosure Statement" or the "DS") of the joint chapter 11 plan of reorganization proposed by the above-captioned debtor (the "Debtor") and LCP SoHo V LLC (the "Senior Lender") and (ii) confirmed the joint chapter 11 plan of reorganization proposed by the Debtor and the Senior Lender (ECF Nos. 40, 79, together with all schedules and exhibits thereto, the "Plan") pursuant to section 1129 of the Bankruptcy Code. The Court issued the Confirmation Order after notice and a hearing on October 20, 2026 (the "Combined Hearing"). In support of the Motion, the Movants submitted a Declaration of Ted Chen.[1] In response, the Senior Lender filed an objection to the Motion (ECF No. 91, the "Objection"),[2] and on November 16, 2026, the Movants filed a reply in support of the Motion (ECF No. 105, the "Reply"), along with the Declaration of Janet Chen in support of the Motion (ECF No. 105-1, the "J. Chen Decl.") and

[1] The original declaration submitted by Ted Chen was filed at ECF No. 86-2 (the "Chen Decl."), though it was later amended by ECF No. 88, and corrected at ECF No. 104-1.
[2] Counsel for the Debtor, Jacobs P.C., submitted a statement concerning the Motion at ECF No. 93 to correct the record with respect to certain statements made in the Motion. ECF No. 93, the "Jacobs P.C. Statement."

the Supplemental Declaration of Ted Chen (ECF No. 105-2, the "Supp. Chen Decl."). The Court held a hearing on the Motion on November 20, 2026, at 11:00 a.m. (Eastern Time) (the "November 20 Hearing").[3] The Movants filed a Notice of Clarification (ECF No. 109, the "Notice of Clarification"), amending certain factual representations set forth in the Motion, in response to the Senior Lender's motion for sanctions, which had been served on the Movants but not yet filed on the public docket as of the date hereof.

The Movants seek (i) to vacate or amend the Confirmation Order pursuant to Rule 9023; (ii) to be relieved from the Confirmation Order pursuant to Rule 9024; (iii) to schedule an evidentiary hearing on whether the Plan satisfies sections 1129(a)(2) and (a)(3) and to fix a new schedule for objections to confirmation and for limited discovery; and, in the alternative, (iv) to obtain a stay of the Confirmation Order and of the occurrence of the Effective Date (as defined in the Plan) pending determination of the Motion and of the Movants' appeal. For the reasons set forth below, the Motion is DENIED in its entirety.

## BACKGROUND

Chen Foundation, Inc. is a Nevada corporation operating in New York whose sole asset is its interest in commercial real property located at 250 Lafayette Street, New York, NY 10012 (the "Property"). ECF No. 1; Plan § 1.55; *Hr'g Tr.* 4:20–25 (Oct. 20, 2026), ECF No. 102-1 (the "Tr."). Shanghai Commercial Bank Ltd., New York Branch ("SCB") and The Shanghai Commercial & Savings Bank, Ltd. ("SCSB," and together with SCB, the "Original Lender") made loans to the Debtor in excess of $20 million.[4] After the Debtor defaulted on the loans, the Original Lender

[3] The Court also heard oral argument at the November 20 Hearing on counsel for the Debtor's Motion to Withdraw (ECF No. 73), which received a limited objection from the Movants (ECF No. 87), who are the same individuals who purported to "terminate" counsel for the Debtor, and ruled on that motion separately.

[4] The loans mean "(a) a loan, dated as of June 23, 2017, in the face amount of $16 million, plus continued accruing interest, costs, fees, penalties, and expenses made by The Shanghai Commercial and Savings Bank, Ltd. and Shanghai Commercial Bank LTD., New York Branch, collectively, to the Debtor, and (b) a loan, dated as of June 30, 2020, in the face amount of $4.85 million, plus continued accruing interest, costs, fees, penalties, and expenses made by The

commenced a commercial foreclosure action in New York Supreme Court captioned *The Shanghai Commercial and Savings Bank, Ltd., New York Branch, v. Chen Foundation, Inc.*, pending in the Supreme Court of the State of New York, County of New York, Index No. 850013/2024 (the "State Court Action").[5] Plan § 1.36. The Senior Lender became the successor in interest to the Original Lender, and the amount of the Senior Lender's lien on the Property exceeds the value of the Property. Plan §§ 1.41, 1.65, 1.70, 4.3; Tr. 16:5–17:3, 17:21–23. In the State Court Action, the state court appointed Nolan E. Shanahan as receiver (the "Receiver") of the Property. Plan § 1.59; *see also* ECF No. 25, Shanahan Decl. in Support of Motion to Continue. On March 13, 2026, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Conf. Order ¶ B. Following notice and a hearing on the motion to approve a stipulation regarding the Receiver (ECF No. 14), this Court permitted continuation of the state-court-appointed Receiver, subject to certain reporting requirements and other conditions. ECF No. 26, Receivership Order.

While the Debtor had previously filed for relief under chapter 11 of the Bankruptcy Code before the Honorable John P. Mastando III on March 18, 2024, that case was dismissed on January 24, 2025. *See* Case No. 24-10438, ECF No. 110, Order Dismissing Case. Notably, the Original Lender had successfully moved for relief from the automatic stay in that case to pursue the state court foreclosure. *See* Case No. 24-10438, ECF No. 101. However, here the Senior Lender joined the Debtor to propose and ultimately confirm the Plan. At the initial case conference, the Debtor and the Senior Lender made their intentions clear: to jointly run an efficient

Shanghai Commercial and Savings Bank, Ltd. and Shanghai Commercial Bank LTD., New York Branch, collectively, to the Debtor, which loans were assigned to the Lender as of on or about January 30, 2025." Plan § 1.41.

[5] The referee appointed by the state court in the State Court Action determined that the amount outstanding on the loans was $30,065,974.51, plus additional accruing interest, fees, costs, and expenses. Obj. ¶ 14. Under the Plan, the Senior Lender's claim is not less than $31,354,144.16 as of December 23, 2025. Plan §§ 1.65, 4.3.

case, with minimal disruption, and confirm a plan following a combined hearing on the disclosure statement and plan of reorganization within six months.

This case proceeded much according to plan until the Friday afternoon before the Combined Hearing. On September 8, 2026, this Court entered the Order Granting Motion (I) Scheduling a Combined Hearing on (A) Adequacy of the Disclosure Statement and (B) Confirmation of the Plan; (II) Approving Form and Manner of Notice of Combined Hearing, (III) Establishing Procedures for Objecting to (A) Disclosure Statement or (B) Plan; and (IV) Approving Solicitation Procedures. ECF No. 37, the "Scheduling Order." On September 10, 2026, the Debtor and Senior Lender filed the Plan and the Disclosure Statement. ECF Nos. 40, 41. The Plan provided for the transfer of the Property from the Debtor to the Senior Lender in full satisfaction of the Senior Lender's claim. Plan §§ 1.56, 4.3, 5.2. The Senior Lender waived any distribution on its deficiency claim but retained the right to vote that claim. *Id.* § 4.3. Notably, the Plan accounted for payment in full of all allowed administrative and priority tax claims and provided a pool of funds for general unsecured creditors, who would not otherwise see a recovery in a liquidation scenario. *Id.* §§ 4.1–4.4; DS Ex. B; Tr. 16:5–17:3.

On September 22, 2026, the Senior Lender filed certificates of service of notices of non-voting status on the holders of administrative expense claims, priority tax claims, governmental claims, Class 1 Other Priority Claims, Class 2 Governmental Authority Lien Claims, and Class 5 Equity Interests, as such holders were either unimpaired and therefore presumed to accept or impaired and deemed to reject, as applicable. ECF No. 57. The Senior Lender also filed certificates of service regarding Classes 3 and 4 ballots for accepting or rejecting the Plan. ECF Nos. 58, 59. On October 9, 2026, the Senior Lender filed the certification of ballots, which

demonstrated that Classes 3 and 4 voted to accept the Plan.[6] ECF No. 61, amended by ECF No. 76. The objection deadline expired on October 13, 2026 (the "Objection Deadline"), by which time ***no*** objections to the Plan or the Disclosure Statement were interposed by any party. Scheduling Order ¶ 3.

On Friday, October 16, 2026, the Court had yet to receive the Debtor's or the Senior Lender's Memorandum of Law in Support of Confirmation. That afternoon, counsel for the Debtor contacted the Court to request an adjournment of the Combined Hearing as the Debtor had allegedly communicated it was seeking new counsel.[7] Shortly thereafter, the Senior Lender provided an opposition to the request for adjournment via email. No motion to adjourn filed, nor was any objection to plan confirmation interposed with or as a basis for requesting the adjournment, prior to the Combined Hearing. Chambers notified the parties that the Combined Hearing would proceed as planned, and argument relating to adjournment, if any, could be raised at the Combined Hearing—but regardless the parties should not further address substantive arguments by email.[8] Further, Chambers notified the parties that requests to withdraw as counsel must be made via motion to be filed publicly on the docket; they cannot be made via informal request contained in an email.[9] Proposed incoming counsel for the Debtor, if any, was then directed to enter a notice of appearance on the docket.

---

[6] Following the combined hearing, the senior lender filed an amended certification of ballots to resolve a typographical error. *See* ECF Nos. 61, 76.

[7] While certain members of the Chen family appear to have communicated to the Debtor on or around October 16, 2026, that they sought new counsel, Jacobs P.C. did not receive official notice of its termination as counsel "for the Chen Family, and any of them, and all affiliates . . ." until October 22, 2026, via email. Jacobs P.C. Statement Ex. 1.

[8] Jacobs P.C. memorialized the adjournment request at ECF No. 73 ¶ 8.

[9] The Debtor has not retained new counsel as of the date hereof, informing in part this Court's denial of the Debtor's Motion to Withdraw (ECF No. 73, the "Motion to Withdraw"), and therefore Jacobs P.C. remains as counsel for the Debtor. ECF No. 114. The Debtor has been directed to propose appropriate substitute counsel by no later than December 4, 2026, at which time Jacobs P.C. may renew its withdrawal motion. *Id.*

On October 19, 2026, the Senior Lender filed the Memorandum of Law in Support of Entry of an Order (I) Approving Adequacy of Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization Proposed by the Debtor and LCP SoHo V LLC and (II) Confirming the Joint Chapter 11 Plan of Reorganization Proposed by the Debtor and LCP SoHo V LLC (ECF No. 72, the "Confirmation Brief"), with declarations in support thereof from Nolan E. Shanahan, as Receiver (ECF No. 71) and Alan Leavitt, as Managing Member of LCP SoHo V LLC (ECF No. 70, together with ECF No. 71, the "Confirmation Declarations"). Mr. Leavitt and Mr. Shanahan were both present at the Combined Hearing and no party came forward with a request for cross-examination or objection to the admission of the Confirmation Declarations into evidence. Tr. 21:1–20, 22:2–4. At the Combined Hearing, Debtor's counsel stated that the Debtor's position had not changed in regard to the request for adjournment (though no motion requesting this relief had been filed). Debtor's counsel also noted that the Debtor's position "of supporting the plan has not been changed as far as I know." Tr. 36:14–17, 36:25–37:2. Following the Senior Lender's presentation on the Plan and the Disclosure Statement, the Court provided its comments, along with revisions to the proposed confirmation order. Tr. 22:12–30:21, 45:17–23. Ultimately, the Court found the Disclosure Statement and the Plan had met the confirmation requirements, subject to the discussed revisions, but reserved approval. Tr. 45:17–23. The Court did not expressly rule on the adjournment request at the Combined Hearing and instead set a forty-eight (48) hour window for the Debtor to interpose an objection to confirmation of the Plan, if it had one. Tr. 42:2–14, 43:7–10. The Court made clear that it would move forward unless it heard the Debtor was in fact objecting and that it would not be enough to say "today we've decided we don't like it" but a more fulsome submission would be required given, among other things, that the Debtor had been a co-proponent of the Plan. Tr. 44:21–24.

On October 22, 2026, the Court received three letters. The first, filed by Evan S. Schwartz of Schwartz, Conroy & Hack, P.C., purported to appear "on a limited basis" for the Movants, though the rules applicable to proceedings in the United States Bankruptcy Court for the Southern District of New York do not recognize "limited appearances" in the court. ECF No. 75, the "Request to Adjourn." The letter stated that the firm did ***not*** represent the Debtor but requested an adjournment on behalf of the Movants, who were identified as the holders of equity in the Debtor. *Id.* The letter also raised three principal issues: first, that the Debtor was without counsel able to prosecute its own plan; second, that the Debtor's principals no longer supported confirmation; and third, that the equity holders had raised serious questions bearing on good faith and adequate disclosure made in connection with the Plan. *Id.* What the letter did ***not*** say was that the Debtor no longer supported the Plan for which it was a co-proponent—and the letter appeared carefully worded to avoid making that statement.

And the concerns that were raised in the letter ultimately were inconsequential, principally because the contention that the Debtor was without counsel was incorrect,[10] and the submission did not otherwise bring to light any new evidence that would alter the Court's initial determinations pursuant to section 1129(a); therefore, the letter provided no non-conclusory basis to deny or delay confirmation of the Plan, to which no objection had been made on or before October 13, 2026 (the objection deadline). Tr. 4:14–15, 35:8–15, 36:5–10, 37:18–21, 44:21–24. Nevertheless, in the event the Court denied the request for adjournment, Schwartz, Conroy & Hack, P.C. sought inclusion of certain reservation of rights language in the proposed confirmation order. *See* Request

[10] Counsel for the Debtor filed its Motion to Withdraw on October 20, 2026, and no ruling on that motion had been given because the required notice period would not expire until November 3, 2026. Because the withdrawal of counsel for a Debtor is subject to court approval, counsel must continue to serve unless and until a court order approving of the withdrawal is granted. S.D.N.Y. LBR 2090-1(e) ("An attorney who has appeared as attorney of record may withdraw or be replaced only by order of the Court for cause shown.").

to Adjourn; Conf. Order ¶ 17. Although styled as a request to adjourn, the letter previewed the issue now pressed in the Motion: that Jacobs P.C. had represented both the Debtor and each of the Movants individually in negotiating the Settlement Agreement (defined below), and that the settlement consideration payable to the Movants had been paid into an account held by Jacobs P.C.'s principal. *See* Request to Adjourn; Obj. ¶¶ 23, 35.

At the same time, counsel for the Debtor submitted its own letter, stating that it had contacted the Debtor's principals and prospective incoming counsel and had received only one response. ECF No. 77, the "Debtor's Letter." Jacobs P.C.'s response averred that the firm had been "terminated" as counsel for "the Chen Family, and any of them, and all affiliates," effective immediately. ECF No. 93-1, Termination Email. The letter emphasized that Schwartz, Conroy & Hack, P.C. had reiterated to Jacobs P.C. that Jacobs P.C. remains counsel for the Debtor and that Schwartz, Conroy & Hack, P.C. had not appeared on behalf of the Debtor. *Id.* Accordingly, Debtor's counsel represented that the Debtor's position continued to be that it sought adjournment of the Combined Hearing. *Id.* Importantly, Jacobs P.C. did ***not*** state in its letter that the Debtor now objected to the Plan and, crucially, no one has contended at any time that Jacobs, P.C. was ever so instructed by either Schwartz, Conroy & Hack P.C. or the equity holders of the Debtor (individually or collectively).

Lastly, the Senior Lender also submitted a letter that highlighted that the Debtor's position on confirmation had not changed and that certain individuals purporting to be represented on a "limited" basis had changed their minds. ECF No. 78, Response to the Letters. The Senior Lender's letter contended that the alleged new information the Movants sought to bring to light had to do with Jacobs P.C.'s handling of the Movants' settlement funds (which were not assets of the Debtor) and had nothing to do with confirmation of the Plan. *Id.* The Senior Lender

incorporated the proposed reservation of rights language sought by the Movants into the proposed confirmation order and submitted it to the Court, *see id.*, and the Court entered the Confirmation Order later that day with the included reservation of rights language. *See generally* Confirmation Order. Fourteen (14) days after that, Schwartz, Conroy & Hack P.C. filed a notice of appeal on behalf of the Movants. ECF No. 85, the "Notice of Appeal."

The Movants now principally allege that certain "facts" were missing from the confirmation record that warrant reconsideration, modification, or vacatur. These include that the Movants, together with other family members, used to occupy premises at the Property. Obj. ¶ 16. To resolve the Receiver's efforts to evict them, the Senior Lender and the Chen family entered into a settlement agreement dated as of December 23, 2025 (the "Settlement Agreement"). Plan § 1.66; Obj. ¶ 16; Tr. 22:15–23:6. In exchange for vacating the Property and assisting in the anticipated bankruptcy filing, the Chens were to receive cash payments from the Senior Lender. Obj. ¶ 16. The Settlement Agreement was entered into prepetition, with an amendment occurring postpetition. *Id.* The amendment was dated September 9, 2026, and according to the Movants, broadened the releases for the Senior Lender pursuant to the Settlement Agreement (the "Amendment"). The Plan and the Disclosure Statement describe the Chens' consideration under the Settlement Agreement as "certain consideration." Plan § 1.66. By July 2026, the Senior Lender had paid $1,101,000 under the Settlement Agreement into a trust account controlled by Jacobs P.C.'s principal. Mot. at 3; Chen Decl. ¶¶ 4–5. Jacobs P.C. represented each of the Movants individually in negotiating the Settlement Agreement and the Amendment, while also serving as counsel to the Debtor. Chen Decl. ¶¶ 2–3, 6. There appears to be a discrepancy as to how much of the Settlement Agreement consideration has been disbursed to the Movants and how much has

been retained by counsel for the Debtor on account of its legal services—in any event, no one alleges that any of the consideration would flow to the Debtor.

Nevertheless, from these facts, the Movants seek to have the Confirmation Order reconsidered and rescinded or amended. The Movants contend that the dual representation in regard to the Settlement Agreement and the handling of the Settlement Agreement consideration, amongst other facts, warrant vacatur of the Confirmation Order, as their belated disclosure disturbs this Court's findings. Alternatively, the Movants seek to be relieved from the Confirmation Order. Lastly, the Movants seek a stay of the Confirmation Order pending their appeal. The Movants sought to have the Motion heard on an expedited basis, so the Confirmation Order could be reconsidered before the transfer of the Property moots their argument. Mot. at 8. The Movants argue that the transfer of the Property is set to occur on the Effective Date,[11] which is a date that the Senior Lender selects, but no later than 30 days after entry of the Confirmation Order (November 21, 2026), "unless a stay of the Confirmation Order is in effect." Mot. at 4. The Movants conceded at oral argument that transfer of the Property could ***not*** occur until the Confirmation Order became final and non-appealable.[12] Plan § 9.2(a) ("Conditions to Effectiveness of the Plan. The Plan shall not become effective unless: (a) The Confirmation Order is a Final Order and is not subject to any stay or injunction. . . .").

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the

[11] Plan § 1.30 ("Effective Date shall mean a date selected by the Senior Lender that is no sooner than the first Business Day following the date on which each of the conditions set forth in Section 9.2 of the Plan have been satisfied or waived in accordance with such sections; provided that such date shall be no later than 30 days following the date the Confirmation Order is entered unless a stay of the Confirmation Order is in effect, in which event the Effective Date shall mean the first Business Day after such stay in no longer in effect.") (internal quotations omitted) (the "Effective Date").

[12] As of the date hereof, the transcript from the November 20 Hearing has not yet been made available.

Southern District of New York, dated January 31, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

## LEGAL STANDARD

The Movants make two direct challenges to this Court's Confirmation Order: one styled as a motion to vacate or amend the Confirmation Order and the other styled as a motion for relief from the Confirmation Order. They also seek a stay pending appeal, which implicates the question of standing to pursue the appellate relief they seek. Each of these standards is set forth below.

**Standard to Alter a Judgment (Rule 9023)**

Federal Rule of Bankruptcy Procedure 9023 ("Rule 9023") renders Federal Rule of Civil Procedure 59 applicable in bankruptcy cases but shortens the time to file a motion to alter or amend a judgment to fourteen (14) days after entry. Fed. R. Bankr. P. 9023. A motion to alter or amend "should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted). It is a narrow remedy, "and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'. . . ." *Id.* (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998)). Indeed, "[t]hese criteria are strictly construed against the moving party." *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). A timely motion made pursuant to Rule 9023 suspends the time to appeal, and a notice of appeal which is filed while the motion is pending becomes effective only when the order

disposing of the motion is entered. Fed. R. Bankr. P. 8002(b)(1)–(2).

**Standard for Relief from a Judgment (Rule 9024)**

Federal Rule of Bankruptcy Procedure 9024 ("Rule 9024") renders Federal Rule of Civil Procedure 60 applicable in a bankruptcy case, subject to certain exceptions, one of which is relevant here: a request to revoke a confirmation order on the ground that it was procured by fraud must be brought by complaint within the time allowed by section 1144 of the Bankruptcy Code. 11 U.S.C. § 1144; Fed. R. Bankr. P. 9024(a)(3); Fed. R. Bankr. P. 7001. Federal Rule of Civil Procedure 60 strikes a balance between the interest in the finality of judgments and the court's ability to correct injustice in exceptional cases. Relief under Rule 9024 is therefore extraordinary and granted only upon a showing of exceptional circumstances. "[A] Rule 60 motion may not be used as a substitute for appeal and . . . a claim based on legal error alone is inadequate." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (internal quotation marks omitted). The Movants originally invoked three of Federal Rule of Civil Procedure 60's grounds in their Motion, yet pursuant to their Notice of Clarification they have abandoned their Rule 60(b)(2) argument. Notice of Clarification ¶ 1. Accordingly, this Decision addresses the two remaining grounds. Federal Rule of Civil Procedure 60(b) provides, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: : . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief."

Each subsection carries its own requirements. Subsection 60(b)(3) requires "that the conduct complained of prevented the moving party from fully and fairly presenting his case." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (finding that a movant could not prevail as a matter of law on a Rule 60(b)(3) motion where the movant admitted that the

letter the other party allegedly concealed was already in the movant's files). Relief under subsection 60(b)(6) requires "extraordinary circumstances." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) ("[C]ourts require the party seeking to avail itself of the Rule to demonstrate that extraordinary circumstances warrant relief.") (internal quotations omitted).

**Standard for a Stay Pending Appeal**

Federal Rule of Bankruptcy Procedure 8007 governs an application for a stay pending appeal from a bankruptcy court's decision. "Ordinarily, a party must move first in the bankruptcy court for the following relief: (A) a stay of the bankruptcy court's judgment, order, or decree pending appeal . . . ." Fed. R. Bankr. P. 8007(a)(1)(A). Whether to grant a stay of an order pending appeal lies within the sound discretion of the bankruptcy court. *In re Sabine Oil & Gas Corp.*, 551 B.R. 132, 142 (Bankr. S.D.N.Y. 2016). To determine whether to grant a stay, bankruptcy courts consider the following four factors: (i) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; (ii) whether the movant will suffer irreparable injury absent a stay; (iii) whether a party will suffer substantial injury if a stay is issued; and (iv) the public interests that may be affected. *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (citing *Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993)); *see Nken v. Holder*, 556 U.S. 418, 434 (2009). Where, as here, a movant seeks appellate review of an order confirming a plan of reorganization, the movant must establish that the findings of fact by the bankruptcy court were clearly erroneous based upon the record before the Court at the evidentiary hearing on the motion to confirm the plan of reorganization. *See Adelphia Commc'ns Corp.*, 361 B.R. at 346 (providing that the "district court functions as an appellate court in reviewing judgments rendered by bankruptcy courts," whereby "[f]indings of fact are reviewed for clear error," meaning the reviewing court must

be "left with the definite and firm conviction that a mistake has been committed") (internal quotations marks omitted). [13]

Not surprisingly, given the exacting standard on appeal, a stay pending appeal under Rule 8007 is "the exception, not the rule," and the party seeking a stay "carries a heavy burden." *In re Carrington*, 698 F. Supp. 3d 659, 661 (S.D.N.Y. 2023) (internal quotations marks omitted), *appeal dismissed*, Case Nos. 24-197, 23-7433, 2024 WL 3491202 (2d Cir. May 3, 2024). The "most critical" factors are a strong showing that appellant is likely to succeed on the merits and likely to suffer irreparable injury absent a stay. *See Nken*, 556 U.S. at 434. The Second Circuit has often treated the stay inquiry as a balancing of factors rather than a checkmark exercise as to each independent factor. *Adelphia*, 361 B.R. at 347; *see In re 473 W. End Realty Corp.*, 507 B.R. 496, 502 (Bankr. S.D.N.Y. 2014) (quoting the Sixth Circuit for the proposition that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay," in other words, more of one factor excuses less of the other). Under any formulation, the Movants' showing falls short.

An appellant from a bankruptcy court order must satisfy both Article III standing as well as the more exacting prudential standard that governs bankruptcy appeals in the Second Circuit. *Lujan v. Defenders of Wildlife* sets forth the operative standard for Article III standing and requires an injury in fact that is concrete and particularized, fairly traceable to the challenged order, and likely to be redressed in a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Over and above this constitutional floor, a party appealing an order of the bankruptcy court must additionally show that the order has directly affected their pecuniary interests. *Kane v. Johns-*

[13] A confirmation order may also be set aside upon a finding of legal error in the decision leading to its entry; however, no one here has asserted any legal error by this Court. *See In re Adelphia Commc'ns Corp.*, 361 B.R. at 346 (stating that questions of law are reviewed *de novo*).

*Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 642 (2d Cir. 1988). Generally, orders disposing of property of the bankruptcy estate that affect creditors' ability to receive payment of their claim will tender such creditors standing to appeal. *Id.* For example, a creditor whose economic interest is impaired pursuant to a confirmed plan of reorganization will constitute a "person aggrieved" fit to appeal the confirmation order, as the creditor is directly and adversely affected pecuniarily by it. *Id.*; *see Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 388 (2d Cir. 1997). Where the Debtor is insufficiently solvent to provide recoveries to equity holders, such holders do not have pecuniary interests at stake necessary to invoke standing to appeal. *Freeman v. J. Reg. Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010). Moreover, that is only half the question. The court must also decide whether a party is the "proper proponent of the rights he seeks to assert." *Kane*, 843 F.2d at 642 (*citing Singleton v. Wulff*, 428 U.S. 106, 112 (1976)). Appellants cannot assert the claims of third parties. *Id.* at 643.

## DISCUSSION[14]

### I. Rules 9023 and 9024

The Movants are not entitled to relief under Rules 9023 and 9024 for the same reasons: the Movants have failed to show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," as the conduct complained of is not new and did not prevent the Movants from fully and fairly litigating their case. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir.

[14] The Secured Lender served Movants with a Rule 11 Letter in connection with these filings and requested that any motion for sanctions be heard on shortened notice. *See* ECF No. 92, Motion to Shorten the Rule 9011 Safe Harbor Period. In response, the Court shortened notice and set a deadline of 9:00 a.m. on the date of the Hearing (Friday, November 20, 2026, at 11:00 a.m.) for Movants to withdraw any pleading they wished without consequence. ECF No. 97. While the Court received a filing late in the evening on Thursday, November 19, 2026, which purported to "correct" some factual misstatements in the papers and to withdraw Movants' argument that the evidence now presented was "newly discovered," no withdrawal of any pending motion was received by the Friday morning deadline and therefore the Court now adjudicates all of the motions it received. *See generally* Notice of Clarification.

2013) (internal quotation marks omitted). Because Movants no longer contend that any of the evidence at issue was "newly discovered," the relief they seek is now based solely on the "need to correct a clear error or prevent manifest injustice." *Id.*; Notice of Clarification ¶ 1. The Court takes up the analyses of the Rule 9023 and 9024 arguments together, as the factual circumstances underpinning both are substantially the same. Because the facts and arguments in the Motion and the Reply differ significantly, the Court takes up the set of facts and legal theories advanced in the Motion first.

While the Movants no longer allege that certain facts are newly discovered, they contend that the lack of disclosure of the following facts requires vacatur of the Confirmation Order to rectify a clear error or prevent a manifest injustice:

> The Debtor's counsel, Jacobs P.C., simultaneously represented the Debtor and each of the Chens individually in negotiating the Settlement Agreement that the Plan implements. (Plan § 1.66; Chen Decl. ¶¶ 2–3). Counsel directed the settlement consideration payable to the Chens into an attorney trust account controlled by its principal, and it has retained $919,239 of the $1,101,000 paid. (Chen Decl. ¶ 5.) Counsel also had the Chens sign the September 9, 2026 Amendment, which broadened the release in the Senior Lender's favor and obligated the Chens to sign whatever bankruptcy documents the Senior Lender requested. Counsel transmitted their signatures to the Senior Lender under the subject line "Latest Plan." (*Id.* ¶ 6.) The Disclosure Statement describes the settlement consideration only as "certain consideration." (ECF No. 41 at 16.)

Mot. at 1–2.[15]

The Movants ask the Court (on the basis of those facts) to vacate or amend the Confirmation Order regarding Findings W and AA pursuant to Rule 9023, as they contend the revelation of the "new" facts necessitates a revisit of the Court's section 1129(a)(3) findings.[16]

---

[15] The Movants have since clarified that their statements concerning the settlement funds and the termination of Jacobs P.C. are as set out in the Supplemental Chen Declaration, Clarification ¶ 3, which acknowledges additional remittances, Supp. Chen Decl. ¶¶ 4–5.

[16] Finding W provides, "The Proponents have proposed the Plan (including all other documents necessary to effectuate the Plan) in good faith, to wit, to maximize the value of the Debtor's estate, and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code." Conf. Order ¶ W. Finding AA states, "The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Leavitt Declaration and the Shanahan Declaration, which the Court

Next, the Movants argue that those same facts may justify vacating the Confirmation Order on the basis of fraud, though they concede (as they must) that they would need to commence an action pursuant to section 1144 and reserve their right to do so. The Court notes that the Movants failed to raise any of their arguments as objections to confirmation (timely or otherwise).[17] None of the declarations filed in support of the Motion or appended to the Reply were admitted into evidence, and neither were any of the exhibits annexed to those pleadings. Although no declaration or exhibit was offered or admitted into evidence at the November 20 Hearing, the Court has considered the Movants' submissions as their own account of the facts. Even accepting that account, the Movants are not entitled to relief. It is of particular note that, though the Movants rely heavily on the contents of the prepetition Settlement Agreement and the postpetition Amendment thereto, neither is in the record and thus they are not properly before this Court.

As to Rule 9023, the Movants first contend that the confirmation record was deficient because no one spoke for the Debtor. Notice of Clarification ¶ 2. That is not so, and it reflects no error by the Court. *See Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104. Nothing in the Bankruptcy Code requires a declaration from a debtor's principal, and none was identified at the Combined Hearing—or by the equity holders of the Debtor at the November 20 Hearing. Tr. 33:2–34:3. Further, counsel for the Debtor did appear at the Combined Hearing, it had authority to do so (it did not receive official notice of its termination until October 22, 2026, a fact

finds to be persuasive and credible and have not been controverted by any other evidence, establish that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. The docket of the Chapter 11 Case does not reflect an election by any class pursuant to Section 1111(b)(2) of the Bankruptcy Code." *Id.* ¶ AA.

[17] Additionally, they failed to raise many of these arguments in their Motion in the first instance and thereby waived them by asserting them for the first time in the Reply. *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).

the Movants concede), and it voiced that the Debtor requested an adjournment.[18] ECF No. 93-1. Counsel for the Movants later clarified through the Notice of Clarification that they acknowledge that Debtor's counsel was actually present, though contend that no witness for the Debtor expressly supported confirmation. Notice of Clarification ¶ 2. While the Movants make much of counsel for the Debtor's statement that as far as it understood the Debtor's position on confirmation had not changed, the Movants fail to acknowledge that the forty-eight-hour process ordered only a few moments later was calculated to avoid the very sort of arguments they now raise because the process guaranteed the Debtor would have an opportunity to interpose a substantive objection should it have one. The Debtor did not, which the Court expressly acknowledged in the Confirmation Order. Conf. Order ¶ 1 n.2 ("The Court acknowledges that certain requests for adjournment were submitted and filed on the public docket on October 22, 2026, after the Combined Hearing had taken place on October 20, 2026. These letters (ECF Nos. 75, 77) did not interpose substantive objections to entry of this Confirmation Order. To the extent the letters (ECF Nos. 75, 77) may be construed as objections to confirmation, they are overruled, as among other things, they are untimely, and the request for adjournment is denied."). Accordingly, the Movants' arguments under Rule 9023 fail. *See In re Asia Glob. Crossing, Ltd.*, 332 B.R. 520, 523 (Bankr. S.D.N.Y. 2005) (providing that "parties cannot advance new facts or arguments" on a motion for reconsideration).

As to the Motion's Rule 9024 argument, the Movants have failed to show that under Rule 60(b)(3) counsel for the Debtor's statement at the Combined Hearing, when contextualized, could rise to the level necessary to warrant their relief from the Confirmation Order. *State St. Bank*

[18] It is of note that the Movants purported to terminate counsel for the Debtor, announcing a plan to substitute counsel for the Debtor, but have not done so. This issue is not academic: Movants are the only ones who could retain new counsel for the Debtor yet have failed to do so despite having already obtained new counsel for themselves.

*& Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (prevailing on a Rule 60(b)(3) argument requires a showing that the opposing party's misrepresentation prevented the moving party from fully and fairly presenting his case). This is particularly true in light of the fact that Movants were aware of the Combined Hearing and chose not to attend individually or through counsel, though they had already been discussing a possible retention with their current counsel as of the date of the Combined Hearing. And then the Movants chose, after the fact, to raise objections in their personal capacity but not on behalf of the Debtor and to do so through counsel they had retained for themselves in their personal capacity rather than on behalf of the Debtor, all the while attempting to terminate counsel for the Debtor with no substitute even though they knew that the Debtor as a corporation could not proceed in the bankruptcy court *pro se*.

The Movants also advance a Rule 9023 argument on the theory that ***only*** counsel for the Debtor could have disclosed certain facts, though it never would have, as doing so would implicate its own conduct. They contend that the failure to disclose resulted in clear error and would work a manifest injustice. Those facts pertain to the simultaneous representation of the Debtor and the Movants in the Settlement Agreement; the possession of the Settlement Agreement consideration; and the decision to sign the Amendment, which broadened the Senior Lender's releases and obligated the Movants to sign whatever bankruptcy proceeding documents were necessary. Contrary to the Movants' representation, certain of these facts were in fact disclosed throughout the pendency of this case; regardless, this line of argument fails for a common reason: all of these facts were known to the Movants well in advance of the objection deadline and they, not the Debtor, chose to remain silent. The Movants had procured the assistance of outside counsel to represent their interest as early as July 2026, while the objection deadline elapsed on October 13, 2026. Supp. Chen Decl. Ex. 1B.

In their Reply, the Movants both raise additional "new" facts and fashion new legal theories for the bases for their relief. The Reply repeats the theory in the Motion that Debtor's counsel had conflicts sufficient to infect and warrant reconsideration of the Court's findings as to section 1129(a)(3). But it raises five new arguments: ***first***, that Debtor's counsel filed an incomplete disclosure under section 329 of the Bankruptcy Code[19] and Rule 2016(b),[20] that counsel for the Debtor was not disinterested within the meaning of section 327(a),[21] and that counsel for the Debtor caused the Debtor to release an estate cause of action without proper notice or approval, all of which warrant reconsideration of the Court's findings as to section 1129(a)(2);[22] ***second***, that the payments made by the Senior Lender to Debtor's counsel pursuant to the Settlement Agreement as compensation for fees in this case require an amendment of the Court's Finding X[23] in the Confirmation Order in accordance with section 1129(a)(4) of the Bankruptcy Code;[24] ***third***, that the exculpation provision embodied in section 6.3 of the Plan constitutes an impermissible nonconsensual third-party release, which requires reconsideration pursuant to section 1129(a)(1);[25] ***fourth***, that the Court relied on an interested party (Mr. Leavitt) for its Findings AA of the Confirmation Order, which warrants reconsideration pursuant to

[19] 11 U.S.C. § 329 (governing Debtor's transactions with attorneys).
[20] Fed. R. Bankr. P. 2016(b) (providing that compensation for services rendered requires disclosing compensation paid or promised to the debtor's attorney).
[21] 11 U.S.C. § 327 (providing for the employment of professional persons who "do not hold or represent an interest adverse to the estate, and that are disinterested persons").
[22] 11 U.S.C. § 1129(a)(2) ("The court shall confirm a plan only if all of the following requirements are met: [including] (2) The proponent of the plan complies with the applicable provisions of this title.")
[23] Conf. Order ¶ X ("The Plan provides that any payment made or to be made by the Debtor's estate for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Bankruptcy Court, as reasonable. Accordingly, section 1129(a)(4) of the Bankruptcy Code is satisfied.")
[24] 11 U.S.C. § 1129(a)(4) ("The court shall confirm a plan only if all of the following requirements are met: [including] (4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.")
[25] 11 U.S.C. § 1129(a)(1) ("The court shall confirm a plan only if all of the following requirements are met: [including] (1) The plan complies with the applicable provisions of this title.")

section 1129(a)(7);[26] and ***fifth***, that counsel for the Debtor's statement at the Combined Hearing constituted a misstatement sufficient to permit the Movants' relief from the Confirmation Order pursuant to Rule 60(b)(3).

The Movants fail to show how any of their "evidence" warrants relief under Rule 9023 and Rule 9024. As to their section 1129(a)(3) argument, the Movants contend the dual representation of the Debtor and the Chens in the Settlement Agreement warranted disclosure and goes to good faith. Section 1129(a)(3) requires that the plan be proposed in good faith and not by any means forbidden by law. Good faith means that "the plan was proposed with 'honesty and good intentions' and with 'a basis for expecting that a reorganization can be effected.'" *Kane*, 843 F.2d at 649 (quoting *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984)). The Movants have known about the dual representation since before the case was filed, as the Settlement Agreement was entered into prepetition. The dual representation of the Settlement Agreement negotiations was in fact disclosed at the Combined Hearing. Tr. 12:13–19. The Movants further contend that the failure of the Debtor to disclose, through counsel, the disbursement of the funds pursuant to the Settlement Agreement brings the Confirmation Order's good faith determination into question. But it is not clear why it would. The consideration for the Settlement Agreement came from the Senior Lender, not the Debtor's estate. Tr. 22:15–23:6; Obj. ¶ 16. That counsel for the Debtor held the consideration for the Settlement Agreement in trust for the Movants (in their capacity as counsel for the Movants) is unsurprising. Further, the Movants were fully aware as of September 4, 2025, that some portion of that consideration would go to counsel for the Debtor for its work on the bankruptcy proceeding. J. Chen Decl. ¶ 2 , Ex. 1. It is not clear how any of

[26] 11 U.S.C. § 1129(a)(7) ("With respect to each impaired class of claims or interests[,] each holder of a claim or interest of such class . . . will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.")

these facts would warrant the unwinding of this Court's finding that ***the Plan*** was proposed in good faith because none of these facts seem to meaningfully relate to the Plan. And even if they did, there is no reason why such arguments could not have been made at any time throughout the pendency of these cases.

As to the Movants' section 1129(a)(2) argument, regarding incomplete compensation disclosures and issues with disinterestedness, any failures of disclosure by counsel with respect to representation or issues of disinterestedness may be addressed under section 329(b) of the Bankruptcy Code or section 328(c) of the Bankruptcy Code, as applicable. The Movants further contend that the Amendment which occurred postpetition released a claim of the estate without approval under section 363(b) or Rule 9019. At the Combined Hearing, the Court asked whether the Settlement Agreement required approval under Rule 9019. The Senior Lender represented that the agreement was between the Senior Lender and the Debtor's principals and provided no separate consideration to the Debtor. Tr. 22:12–23:6. To the extent the Settlement Agreement bears on the Debtor's property, the Plan embodies it, Plan §§ 4.3(b), 11.14(a), and the Plan's compromise of the Debtor's claims was approved on confirmation under section 1123(b)(3)(A) and Rule 9019. *Id.* § 11.7. The Plan releases the Debtor's claims only to the extent they arise from the negotiation, formulation, or implementation of the Plan, *id.* § 6.1, and it preserves the Debtor's other claims, *id.* § 11.17. The Amendment, which the Movants fail to provide, presents no basis to vacate or amend the Confirmation Order.

Under section 1129(a)(4), the Movants argue that because the Settlement Agreement funded certain payments that became attributable to Jacobs P.C.'s legal fees in connection with this case, Finding X in the Confirmation Order is insufficient as it only covers payments made by the Debtor's estate. The payments remain subject to this Court's review under section 329 of the

Bankruptcy Code. If any payments were improper, section 329(b) is the proper vehicle for redress, not this Motion. Section 1129(a)(4) is satisfied where payments are subject to the approval of this Court as reasonable. 11 U.S.C. § 1129(a)(4). Moreover, the Movants were aware of this arrangement well before the objection deadline. On September 4, 2025, Ted Chen and Janet Chen received an email from the Senior Lender's counsel describing the terms of the proposed settlement. The email stated that part of the consideration to be paid to the Chen family would be allocated to legal fees, including fees for a bankruptcy. J. Chen Decl. ¶ 2, Ex. 1. As of July 17, 2026, Julie Chen had written a demand letter (appended to the Supp. Chen Decl. as Exhibit 1B), which advanced many of the grievances now raised pertaining to the Settlement Agreement funds, included many of the same legal theories now being advanced, and copied Jacob Frydman, who has represented himself as counsel to Movants. Supp. Chen Decl. Ex. 1B.

Pursuant to section 1129(a)(1), the Movants argue section 6.3 of the Plan, titled "Exculpation," constitutes an impermissible nonconsensual third-party release. The Court recognized this possible interpretation at the Combined Hearing, and counsel for the Senior Lender made clear no such effect was intended, and the Plan was amended accordingly at section 6.1. Tr. 25:6–26:10. Section 6.1 of the Plan expressly provides that the Plan "does not release . . . any claim or cause of action belonging to any creditor, holder of an Equity Interest or other non-Debtor person or entity against any Released Party." Plan § 6.1. The Court construes section 6.3 of the Plan consistent with section 6.1 and relies on the Senior Lender's confirmation on the record at both the Combined Hearing and the November 20 Hearing that there is no release of any non-Debtor holder against any non-Debtor party.[27]

[27] Because the Movants did not appear at the Combined Hearing, either personally or through counsel, and their counsel indicated at the November 20 Hearing that he had not yet reviewed the transcript from the Combined Hearing, it seems Movants were unaware of the resolution of this issue.

As to the Movants' section 1129(a)(7) argument, the Movants contend that Finding AA in the Confirmation Order rests on evidence set forth by an interested witness and that due to a pending claim on the Property, the liquidation analysis may be incorrect. Neither argument has merit. First, Mr. Leavitt was present at the Combined Hearing. Counsel for the Senior Lender requested that his declaration be admitted, no party came forward with an objection, the Court offered the witness for cross-examination, and no party requested questioning. Tr. 20:8–22:4. Mr. Leavitt's declaration was therefore admitted into evidence, without objection. Further, the best interests analysis does not depend on Mr. Leavitt's appraisal. The Movants' argument that the mortgages on the Property may be deemed void is entirely hypothetical and conjectural. Moreover, Movants have not presented any evidence pegging the value of the Property at any number at all, let alone one that might be in tension with the appraisal in the evidentiary record here. More to the point, the Senior Lender's allowed claim is not less than $31,354,144.16. Plan §§ 1.65, 4.3. The proponents valued the Property at $27.9 million, the Debtor's own scheduled value and the higher of the two values in the record. Even at that value, the Property is underwater by at least $3,454,144.16. Tr. 16:5–17:3, 17:21–23; Plan § 1.70; DS Ex. B. Holders of Equity Interests would receive nothing in a chapter 7 liquidation.

In sum, there is no basis to alter or amend the Confirmation Order pursuant to Rule 9023, as there is no clear error or manifest injustice. Further, there is no basis on which to give the Movants relief from the Confirmation Order pursuant to Rule 9024. As to any Rule 60(b)(3) argument, the Movants have failed to show how an opposing party's misconduct prevented them from fully and fairly presenting their case. The emails from the Senior Lender to the Movants suggest the Movants were fully aware of the latest version of the plan prior to confirmation and in fact comfortable with it; the alleged misstatement by counsel for the Debtor at the Combined

Hearing was not of any consequence;[28] and any arguments as to fraud in procuring confirmation should proceed under section 1144 of the Bankruptcy Code. Supp. Chen Decl. Ex. 2. And the Movants have failed to produce any evidence amounting to the extraordinary level required under subsection 60(b)(6). *See In re Kirwan Offs. S.à.R.L.*, 792 F. App'x 99, 104 (2d Cir. 2019) (finding that appellant's Rule 60(b)(6) argument failed where the appellant argued the bankruptcy court wrongly decided issues pertaining to an exculpation clause because a Rule 60 motion based on legal error alone is inadequate). The Court will not disturb its findings in the Confirmation Order or give Movants relief from the Confirmation Order.

## II. Motion for Stay Pending Appeal

Regarding the request for a stay pending appeal, as a threshold matter, the Movants are unlikely to establish standing to attack the Confirmation Order on appeal: even assuming the cancellation of their equity interest satisfies Article III standing, they do not have a pecuniary interest affected by the Confirmation Order.[29] It is undisputed that the Senior Lender was undersecured in this case and that there were additional unsecured creditors in line after the Senior Lender. Plan §§ 1.70, 4.5 (providing that the Senior Lender's Claim exceeds the value of the Property, resulting in an unsecured deficiency of at least $3,454,144.16 and providing that equity interests are deemed cancelled as of the Effective Date and shall receive no distribution). The Plan could not afford to pay the Senior Lender in full, and even if it had, any excess value would have gone to the general unsecured creditor pool, rather than to equity holders. Plan §§ 1.50, 4.3, 4.4.

[28] The Court granted the Debtor additional time after the Combined Hearing to impose a substantive objection. The Debtor never withdrew as a proponent of the Plan and never objected to it, and pursuant to Federal Rule of Bankruptcy Procedure 3020(b)(3) "if no objection is timely filed, the court may, without receiving evidence, determine that the plan was proposed in good faith and not by any means forbidden by law." Regardless, here, the Court ***did*** receive evidence of good faith from the Confirmation Declarations in addition to the representations made at the Combined Hearing.

[29] Bankruptcy appellate standing differs from standing to bring the Federal Rule of Bankruptcy Procedure 9023 and 9024 requests.

*Freeman v. Journal Register Co.* held that the appellant, an equity holder, lacked standing to appeal the bankruptcy court's approval of a chapter 11 plan where various classes of creditors received less than their full recoveries, reasoning that the appellant had ***no basis for recovery*** and therefore lacked the requisite pecuniary interest at stake. 452 B.R. 367, 370–71 (S.D.N.Y. 2010). It is no different for the out-of-the-money equity holder Movants here, and the equity holders have raised no challenge to the size of the Secured Lender's claim. Moreover, the injury the Movants allege, the mishandling of ***their*** settlement funds, is ***personal*** to them (not the Debtor), and does not give rise to any injury to the Debtor or its creditors sufficient to allow a challenge to confirmation.

Further, on balance, the Movants fail to show how any of the factors germane to obtaining a stay weigh in their favor for the reasons set forth below.[30]

***Substantial Possibility of Success on Appeal***

First and foremost, because the Movants lack standing, they cannot succeed on the merits of an appeal. The Notice of Appeal was taken from the Confirmation Order.[31] The fact findings therein are reviewed for clear error and its legal conclusions are reviewed de novo (though no one here challenges the legal standard applied). *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007). To the extent the Movants seek review of the denial of Rule 9023 and Rule 9024 relief, which post-dates the Notice of Appeal,

[30] This Memorandum of Decision and Order renders the notice of appeal effective under Rule 8002(b)(2). Accordingly, if the Movants want to challenge this ruling as well, they must amend their notice under Rule 8002(b)(3).
[31] The Movants did not directly brief their adjournment request in connection with their Motion, but for the sake of completeness, the standard applicable in an appeal from a denial of a request for adjournment is abuse of discretion. *In re Gordon*, 577 B.R. 38, 48 (S.D.N.Y. 2017) ("Upon review, the decision of a Bankruptcy court to grant or deny a continuance should only be overturned upon a showing of an abuse of discretion which substantially impairs the ability of the appealing party to litigate effectively.") (citations omitted). Here, because no justifiable reason for the delay was ever proffered and no objections to the Plan were ever received, there was no verified reason to further delay the hearing to determine confirmability of the Plan. Post-hearing, when the Court provided the Debtor with forty-eight hours to interpose any substantive objection it had, the Debtor still came forward with no objection, confirming that an adjournment was unwarranted under the circumstances.

they must file an amended notice of appeal. Fed. R. Bankr. P. 8002(b)(3). Any such appeal would be reviewed for abuse of discretion with respect to Rule 9023 and 9024 relief. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (Rule 59(e)); *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (Rule 60(b)). And because the Movants' Rule 9023 arguments turn on whether the Court committed clear error in confirming the Plan, that analysis largely overlaps with the analysis of the merits of their appeal of the Confirmation Order. Movants have not raised any change in controlling law or newly available evidence, and cannot establish clear error or manifest injustice, since they were aware of the "evidence" on which their grievances now rely for many months in advance of the objection deadline. *See* Mot. at 3; Chen Decl. ¶ 5. (Indeed, they apparently first contacted their current counsel approximately three months ***before*** the deadline to object to the plan of reorganization that was ultimately confirmed in this case.)

***Irreparable Injury to the Movants***

The Movants also fail to demonstrate how they would be irreparably harmed absent a stay pending appeal for a number of reasons. Most notably, the Plan's own terms appear to prevent the Effective Date from occurring while the appeal remains pending and therefore any alleged harm cannot be considered "imminent." Plan §§ 1.30, 1.35, 9.2(a); Obj. ¶¶ 3, 44. That is, Movants contend that upon the Effective Date, the Debtor will convey the Property, dissolve, and the case will close, rendering the Movants' appeal moot; yet, it is well settled that the "possibility that an appeal will be rendered moot by denial of stay does not, in and of itself, constitute irreparable harm." *In re Calpine Corp.*, No. 05-60200, 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008) (internal quotations and citations omitted). While the Court recognizes the Movants' frustration regarding the distribution of the funds relevant to the Settlement Agreement, that harm is entirely attenuated from one in which this Court has a concern (*i.e.*, if that grievance somehow

had an effect on the Debtor, its estate, or its creditors). Moreover, any harm facing the Movants is a product of their failure to participate in the Confirmation process or to raise any issues timely. Any injuries they now claim to face appear to be the result of their own lack of diligence, or issues between themselves and their personal lawyers, rather than of some structural or procedural impropriety implicating the Plan of Reorganization or the Disclosure Statement in this matter. *See id*. In any event, the Confirmation Order expressly preserves the Movants' rights regarding its personal claims against Jacobs P.C., so denying a stay would not cause any harm to the injury they actually allege. Conf. Order ¶ 17.

**Substantial Injury to Other Parties**

On the other hand, the imposition of a stay would cause substantial harm to the Debtor and Classes 3 and 4 who voted in favor of the Plan. The Movants Notice of Appeal has already delayed the Effective Date under the Plan because section 9.2(a) of the Plan requires the Confirmation Order to be a final order and not subject to a say or injunction. Plan § 9.2(a). The Effective Date itself is conditioned upon section 9.2(a) being satisfied. Distributions on account of allowed claims are set to occur upon the Effective Date, as well as the assumption and assignment of certain designated contracts, and the payment of undisputed cure amounts. *Id.* §§ 4.4, 7.1, 8.1(b)–(c). A stay pending appeal would truly work an injustice here to the Debtor and other stakeholders who voted in favor of the Plan because it will increase costs to the Debtor and its estate, diminishing returns for unsecured creditors, all in service of an appeal unlikely to succeed.

**Public Interest**

There is a strong public interest in timeliness and finality of bankruptcy proceedings, weighing decidedly in favor of denying the request for stay. *See First Nat. Bank of Maryland v. Markoff*, 70 B.R. 264, 265 (S.D.N.Y.1987) (conveying the "public interest in timeliness and

finality of bankruptcy proceedings"). The Movants contend that the public has a strong interest in confirmation orders that rest on candid disclosure and conflict-free representation of the debtor and this Court entirely agrees. Mot. at 8. What the Movants fail to show is how the Confirmation Order at issue did not rest on candid disclosure. Though they allege the Settlement Agreement in some way disrupts this Court's findings of good faith, they have failed to show how, as the Settlement Agreement was entered into in their individual capacity, the Settlement Agreement was entered into prepetition, and it was disclosed in the Disclosure Statement. That the Settlement Agreement was amended postpetition in September is of no consequence; if anything, it further underscores the ample time the Movants had to raise any issues of conflict or the like and bring it to the Court's attention. Despite being apprised of the applicable deadlines, the Movants waited until two days after the Combined Hearing and fourteen days after entry of the Confirmation Order to voice their grievances. Accordingly, no facts have been set forth that will outweigh the public's interest in the need for finality of decisions.

## CONCLUSION

For the reasons stated above and at oral argument, the Motion is **DENIED**. Because the request for a stay is denied, the competing bond requests are moot. The Movants are directed to order a transcript from the November 20 Hearing. It is so ordered.

Date: November 23, 2026
New York, New York

/s/ *Shireen A. Barday*
**HONORABLE SHIREEN A. BARDAY**
**UNITED STATES BANKRUPTCY JUDGE**